# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| GIORGIO ZAMPIEROLLO-RHEINFELDT,<br><br>**Plaintiff,**<br><br>v.<br><br>INGERSOLL-RAND DE PUERTO RICO, INC. and/or TRANE PUERTO RICO, and/or TRANE PUERTO RICO LLC,<br><br>**Defendants.** | CIVIL NO. 15-1255 (RAM) |

## OPINION AND ORDER

RAÚL M. ARIAS-MARXUACH, District Judge

Pending before the Court is Defendants Ingersoll-Rand Puerto Rico, Inc. and/or Trane Puerto Rico, and/or Trane Puerto Rico LLC's *Motion in Limine and Requesting Order to Strike Exhibits 5, 10, 11 From Plaintiff's Opposition to Motion for Summary Judgment* ("Motion in Limine") (Docket No. 33). After considering the *Motion* as well as the subsequent opposition and sur-reply, the Court **GRANTS** the pending *Motion in Limine*.

For the reasons set below, both the Trane Chile Office "Business Overview" (Exhibit 31-5) and the HVAC Puerto Rico office "2013 Financial Summary" (Exhibit 31-10) are **stricken** from the record. The Court need not address the Caribbean Business newspaper page showing a table entitled "Puerto Rico's Largest Air Conditioner Distributors" (Exhibit 31-11) as it was **voluntarily withdrawn** from the record by Plaintiff in his *Opposition to*

*Defendants Motion in Limine and Requesting Order to Strike Exhibits 5, 10, 11 From Plaintiff's Opposition to Motion for Summary Judgment* ("Opposition"). (Docket No. 41 at 5).

## I. FACTUAL AND PROCEDURAL BACKGROUND

On March 18, 2015, Plaintiff Giorgio Zampierollo-Rheinfeldt ("Zampierollo" or "Plaintiff") sued Ingersoll-Rand Puerto Rico, Inc. and/or Trane Puerto Rico, and/or Trane Puerto Rico LLC (collectively, "Defendants") seeking monetary damages and declaratory relief under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. 621 *et seq.*, Puerto Rico Law No. 100, 29 P.R. Laws Ann. tit § 146 *et seq.* ("Law 100"), and Puerto Rico Law No. 80, 29 P.R. Laws Ann. tit § 146 *et seq.* ("Law 80"). (Docket No. 1 at 7-9). Generally, he averred that he was wrongfully discharged due to his age and his duties were assigned to two (2) younger employees. Id. at 7 ¶¶ 44-45.

Defendants filed a *Motion for Summary Judgment* on January 8, 2016 alongside a *Statement of Uncontested Material Facts* ("SUMF"). (Docket Nos. 19 and 20). In response, Plaintiff filed a *Memorandum of Law in Support of His Opposition to Defendant's Motion for Summary Judgment* ("Memorandum in Opposition") (Docket No. 30) and an *Opposition To "Defendants' Statement of Uncontested Material Facts In Support Of Motion For Summary Judgment" And Plaintiff's Additional Statements Of Uncontested Facts* ("Opposition to SUMF"). (Docket No. 31). The Court will address the pending *Motion for*

*Summary Judgment* (Docket No. 19) and the *Memorandum in Opposition* (Docket No. 30) in a separate Opinion and Order.

Defendants' pending *Motion in Limine* seeks to strike from the record Exhibit 5 and Exhibit 10 from Plaintiff's *Opposition to SUMF*. (Docket No. 33). Defendants claim that the exhibits should be precluded from evidence because: (1) they were belatedly produced in violation of Fed. R. Civ. P. 26(a) and (e); and (2) they lack proper authentication. Id. at 3-6.

## II.  LEGAL STANDARD

### A. Civil Procedure Rules Governing Duty to Disclose in Pre-Trial Discovery Process

Fed. R. Civ. P. 26 "promotes fairness both in the discovery process and at trial." TLS Mgmt. & Mktg. Servs. LLC v. Rodriguez-Toledo, 2018 WL 4677451, at *12 (D.P.R. 2018) (quotation omitted). It is also meant to "prevent 'trial by ambush,' because opposing counsel cannot adequately cross-examine without advance preparation." Diaz-Casillas v. Doctors' Ctr. Hosp. San Juan, 342 F. Supp. 3d 218, 226–27 (D.P.R. 2018) (citing Macaulay v. Anas, 321 F.3d 45, 50, 52 (1st Cir. 2003)).

Fed. R. Civ. P. 26 governs how parties must make initial disclosures. To comply, a party must provide "a copy--or a description by category and location-of all documents, electronically stored information, and tangible things **that the disclosing party has in its possession, custody, or control and**

**may use to support its claims or defenses**, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(ii). Furthermore, a party must supplement its initial disclosures "in a **timely** manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and **if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing**." Id. If a party fails to abide by either subsection, Fed. R. Civ. P. 37(c) applies.

Specifically, Fed. R. Civ. P. 37(c)(1) "authorizes the trial court to impose sanctions, up to and including dismissal of the action on account of a party's failure to comply with these automatic disclosure obligations." López Ramírez v. Grupo Hima San Pablo, Inc., 2020 WL 365554, at *3 (D.P.R. 2020) (quotation omitted). "[W]hen a party fails to provide information […] as required by Rule 26(a) or (e), the party is not allowed to use that information […] to supply evidence on a motion, hearing, or at a trial, **unless the failure was substantially justified or is harmless**." Vargas-Alicea v. Cont'l Cas. Co., 2019 WL 1453070, at *5 (D.P.R. 2019). It is the party facing sanctions who must prove the same. See Eldridge v. Gordon Bros. Grp., L.L.C., 863 F.3d 66, 85 (1st Cir. 2017). Thus, exclusion of evidence is "not a strictly mechanical exercise." Medina Rodriguez v. Canovanas Plaza Rial

Econo Rial, LLC, 2019 WL 5448538, at *5 (D.P.R. 2019) (quotation omitted).

Lastly, The First Circuit has enumerated several factors district courts should consider when determining whether to preclude previously undisclosed evidence. These include:

> (1) the history of the litigation; (2) the sanctioned party's need for the precluded evidence; (3) the sanctioned party's justification (or lack of one) for its late disclosure; (4) the opponent-party's ability to overcome the late disclosures' adverse effects—e.g., the surprise and prejudice associated with the late disclosure; and (5) the late disclosure's impact on the district court's docket.

Esposito v. Home Depot U.S.A., Inc., 590 F.3d 72, 78 (1st Cir. 2009) (citation omitted). *See also* Amoah v. McKinney 875 F.3d 60, 62 (1st Cir. 2017).

### III. ANALYSIS

The parties had until October 16, 2015 to conduct discovery. (Docket No. 12). On October 2, 2015, the Court extended the discovery deadline until November 30, 2015. (Docket No. 16). In their *Motion in Limine*, Defendants claim that Exhibits 5 and 10 of the *Opposition to SMUF* were belatedly produced (Docket No. 33 at 2).[1] They also claimed in both the *Motion in Limine* and in their *Reply to Opposition to Motion in Limine* ("Reply"), that Plaintiff

---

[1] The Court notes that in the *Motion in Limine*, the "untimeliness" argument is made regarding Exhibit 5, whereas the lack of authentication argument is used primarily to strike Exhibit 10. (Docket No. 33). However, as both Exhibits 5 and 10 were first included as part of the same *Opposition to SMUF*, the Court will address whether both Exhibits were untimely disclosed.

failed to authenticate both Exhibits, since he provided no details as to where they came from or who prepared them. (Docket Nos. 33 at 5-6 and 45 at 1).

A look at the factors detailed in Esposito shows that most of them are not in Plaintiff's favor.

**A. History of the Litigation**

In the present case, there is no evidence on the record that Plaintiff has failed to comply with the Court-imposed deadlines or abused the discovery process. While the discovery, dispositive motion and pretrial deadlines were extended at different times, Plaintiff does not have a monopoly on the requests for extension. (Docket Nos. 13 and 27). Some were also presented by Defendants (Docket Nos. 15 and 17) and others were filed jointly. (Docket No. 22). In the First Circuit's Esposito opinion, the Court noted that the case was not one "where the sanctioned party ignored pre-sanction warnings from the district court" or which seemed to be "an act of calculated gamesmanship on the part of the sanctioned party." Esposito, 590 F.3d at 79. A similar situation occurred here. *Compare with* Santiago-Díaz v. Laboratorio Clínico y De Referencia Del Este, 456 F.3d 272, 277 (1st Cir. 2006) (holding that preclusion of expert testimony was proper as plaintiff's "dereliction [of the Court deadlines] was both obvious and repeated.") Thus, this factor is neutral at best.

**B. The Plaintiff's Need for the Exhibits**

In his *Opposition*, Plaintiff states that Exhibit 5 (Business Overview – Chile) is "pertinent" because it "evidently casts doubt on the truthfulness of Defendant's new theory." (Docket No. 41 at 4). This "new" theory being that Plaintiff was terminated "as a result of an implementation [in the Puerto Rico office] of a 'successful' structure that had already been used in Chile." Id. Plaintiff thus uses Exhibit 5 to show that the structure in place at the Chile office was "far from successful," that the Chile office "barely made Operating Income [from 2009-2012], and was losing money." Id. at 5. However, "that proposition—even if accepted—does not establish the sort of 'need' for the evidence necessary to allow its introduction even if it has not been timely disclosed." Contour Design, Inc. v. Chance Mold Steel Co., 2011 WL 4527404, at *9 (D.N.H. 2011).

To prevail in a ADEA claim, a Plaintiff must show that age was "the but-for cause of his or her termination by a preponderance of the evidence." Rodriguez-Cruz v. Stewart Title Puerto Rico, Inc., 209 F. Supp. 3d 427, 438 (D.P.R. 2016) (citation omitted). Exhibit 5 fails to show this "but-for cause." Hence, "the admission or exclusions of [this exhibit] is not what will determine the success of the Plaintiff's case." Carrington Mortg. Servs., LLC v. Gionest, 2020 WL 86195, at *4 (D. Me. 2020). Moreover, by presenting this Exhibit, Plaintiff seems to be inviting the Court

to second-guess Trane's decision to replicate the Chile structure in its restructuring of the Puerto Rico office and as an alleged justification for Plaintiff's discharge. The First Circuit has admonished Courts not to do this. *See* Theidon v. Harvard Univ., 948 F.3d 477 (1st Cir. 2020) (quoting Rodríguez-Cardi v. MMM Holdings, Inc., 936 F.3d 40, 48-49) (1st Cir. 2019)) (quotation marks omitted) ("[W]hen faced with employment decisions that lack a clear discriminatory motive, **[c]ourts may not sit as super personnel departments, assessing the merits -- or even the rationality -- of employers nondiscriminatory business decisions**.")

Turning to Exhibit 10 (HVAC – PR 2013 Financial Summary), Plaintiff fails to explain his "need" for that exhibit and instead only addresses Defendants' lack of authentication argument for the same. (Docket Nos. 33 at 5-6 and 41 at 4-5). In an attempt to counter the lack of authentication argument, he only avers that Exhibit 10 is "substantially the same as Defendants Exhibit 5" of Defendants' SMUF, a 2013 Financial Summary of Climate Solutions Puerto Rico. (Docket Nos. 20 at 5 and 41 at 4-5). He therefore argues that even if the Court were to strike Plaintiff's Exhibit 10 of his *Opposition to the SMUF*, "the same conclusion can be drawn from Defendants' Exhibit 5 of the SMUF" that the Company was making a profit. (Docket No. 41 at 5). However, this argument hinders Plaintiff. It shows the Court that Plaintiff does not actually

need Exhibit 10 to purportedly reach the same conclusion that Trane was allegedly making a profit at the time it decided to discharge Plaintiff.

This second factor favors exclusion. Lastly, the Court notes that "[r]eversals based on a sanctioned party's need for precluded evidence are rare, and seldom based on that factor alone." Harriman v. Hancock Cty., 627 F.3d 22, 32 (1st Cir. 2010).

**C. The Plaintiff's Justification for the Late Disclosure**

This third factor also weighs in favor of exclusion. In his *Opposition*, Plaintiff contends that he chose to disclose the Business Overview pertaining to Trane's Chile office (Exhibit 5) in his *Opposition to SUMF* because it only became relevant once Defendants allegedly referenced Chile's organizational structure for the first time in their *Motion for Summary Judgment.* (Docket Nos. 19 and 41 at 3). Plaintiff avers he only disclosed Exhibit 5 in reaction to the "new theory" that the restructuring of the Puerto Rico office was based on Chile's current structure. (Docket No. 41 at 4).

In their *Reply*, Defendants posit that it is unlikely that Plaintiff first became aware of the alleged success of the "Chilean structure" from their *Motion for Summary Judgment,* as the structure of that office was first mentioned in the deposition of Mr. Enrique Flefel ("Mr. Flefel") taken on November 15, 2015, before the discovery cut-off date. (Docket No. 45 at 2). Moreover, as

Defendants highlighted in their *Reply*, Plaintiff's own Exhibit 1 to his *Opposition* is an excerpt from Mr. Flefel's deposition addressing the Chilean structure. Id. (citing Docket No. 41-1). Plaintiff avers however that Defendants only added this "new theory" to their case after Mr. Flefel testified in his Deposition that he wanted to implement the Chile structure in Puerto Rico. (Docket No. 41 at 3-4). Plaintiff also argues that Defendants failed to raise this theory before in the Answer to the Complaint or in their Statement of Position before the EEOC. Id. at 4.

The Court agrees with Defendants that Plaintiff failed to supplement his initial disclosures and discovery by not providing the Business Overview before the discovery cut-off date when he had learned about the two-area structure in other Trane offices from Mr. Flefel's own deposition. Thus, he failed to comply with Fed. R. Civ. P. 26(a) and 26(e). Id. *Compare with* Ares-Perez v. Caribe Physicians Plaza Corp., 261 F. Supp. 3d 265, 268–69 (D.P.R. 2017) (holding that defendants complied with Fed. R. Civ. P. Rules 26(a) and (e) as the disclosure of the existence of an ER incident report in a deposition led to the subsequent production of said report by Defendants forty (40) days later and twenty (20) days **prior** to the discovery deadline).

Moreover, Plaintiff failed to prove that the late disclosure of Exhibit 5, and by extension Exhibit 10, was justified or harmless. Plaintiff only addressed Defendants allegations that

Exhibit 10 was improperly authenticated. Merely stating that Plaintiff had "access" to Exhibit 5 and 10 because of his General District Manager role and that he simply "conducted a search and found [the] documents" only after Defendants included their "new theory" in the *Motion for Summary Judgment* is insufficient to justify the late disclosures. (Docket Nos. 41 at 4 and 45 at 2). Moreover, the affidavit attached to Plaintiff's *Opposition* sought to authenticate the Exhibits but serves to highlight the lack of justification for late disclosures of the exhibits. (Docket Nos. 41 at 5-6 and 41-2). In the relevant part, Plaintiff's affidavit read as follows:

> 7. As part of Trane's ordinary course of business activities, financial data were regularly collected and updated by the finances team of each office.
>
> 8. In my case, as District General Manager, I would constantly receive quarterly and yearly financial summaries regarding not only the Puerto Rico, but of the other Trane offices within the region. Moreover, I constantly used the best practices obtained from these summaries to make decisions and determine strategies for the office in Puerto Rico.
>
> 9. **Therefore, as District General Manager for Trane for thirteen (13) years, I can give faith and attest that the following documents [Exhibits 5 and 10] were prepared in the ordinary course of business of Trane and accessible to me as District General Manager.**

(Docket No. 41-2 ¶ 7-9). This shows that Plaintiff had access to the documents before discovery closed. *See e.g.*, Berryman-Dages v. City of Gainesville Fla., 2012 WL 1130074, at *3 (N.D. Fla. 2012). The Berrymen-Dages Court concluded that "[s]ince all evidence

suggests that Berryman-Dages was in possession of the relevant documents the whole time, and she does not provide justification for the late disclosures, this court finds that she has violated Rule 26(e)."

Lastly, Plaintiff attempts to justify his late disclosure by stating that exhibits such as Exhibit 5 are "corporate document[s] prepared and drafted by Defendants" and that "Defendants fail to inform this Court that they are custodians of this document." (Docket No. 41 at 2-3). Defendants contend that they are not the custodians of these Exhibits which are the responsibility of the Trane Chile office while the present case is against Ingersoll-Rand Puerto-Rico, Inc. and Trane Puerto Rico, LLC, "entities which are circumscribed to operations within the jurisdiction of Puerto Rico." Id. The Court agrees with Defendants.

Even if *arguendo*, Ingersoll Rand and Trane's Puerto Rico offices had access to those Exhibits, regardless of whether they were produced by the Trane Chile office or its own office, that does not justify Plaintiff's late disclosure of the same. In Shatsky v. Syrian Arab Republic, the District Court for the District of Columbia held that knowledge of certain documents, even if they were publicly available and had been used by defendants in other cases, did not justify plaintiffs' belated disclosure. *See* Shatsky v. Syrian Arab Republic, 312 F.R.D. 219, 226 (D.D.C. 2015). The Shatsky Court held that it "is preposterous

to suggest that knowledge, however atmospheric, of certain documents ensures a fair and equal discovery process for the party that is blindsided by their eleventh hour production. It surely does not. **Existential awareness has never been, nor will it ever be, a substitute for production**." Id. See also, Martino v. Kiewit New Mexico Corp., 600 Fed. Appx. 908, 911 (5th Cir. 2015) ("[E]ven if a document is publicly available or in the opposing party's possession, a party must still disclose it under Rule 26(a)(1)(A) to provide notice of evidence central to its claims or defenses.")

Plaintiff failed to prove that the Exhibits were unavailable before the discovery cut-off, which in turn favors exclusion of the Exhibits. See Maine Med. Ctr. v. William A. Berry & Son, Inc., 2017 WL 1411478, at *3-4 (D. Me. 2017) ("MMC has not, however, produced evidence that demonstrates that the information […] was unavailable before Morin was consulted[.] […] MMC offers no justification for why Morin was not consulted until long after the deadline for initial expert disclosures, and more than a month after the deposition of Dr. Bancroft.")

**D. The Defendants' Ability to Overcome the Late Disclosure's Adverse Effects**

If the Exhibits were admitted, Defendants would be harmed in the process. First, discovery might have to be re-opened, years after it already closed on November 30, 2015. (Docket No. 14). The First Circuit's opinion in Harriman v. Hancock County is

informative in this regard. Harriman held that a plaintiff's late disclosure was not harmless after defendants had already submitted a summary judgment motion premised on evidence provided by both parties before the discovery cut off. *See* Harriman, 627 F.3d at 31. To wit, Harriman explained:

> Harriman's late disclosure was not a harmless inconvenience. The defendants prepared and filed a summary judgment motion premised on evidence submitted before the discovery deadline. Harriman opposed the motion with affidavits obtained after that deadline, from witnesses whom he had not provided the defendants an opportunity to depose. **While perhaps not as palpable as if trial were looming, the prejudice to defendants was real.**

Id. *See also,* Primus v. United States*,* 389 F.3d 231, 236 (1st Cir. 2004) (finding prejudice when information disclosed after summary judgment motion filed but before trial was imminent); Transamerica Life Ins. Co. v. Lincoln Nat'l Life Ins. Co., 255 F.R.D. 645, 652 (N.D. Iowa 2009) (finding that belated disclosure of documents was prejudicial to defendants because it offered "a different picture of the relevant issues.") Lastly, Plaintiff fails to state how admitting the proffered Exhibit 5 and 10 is harmless. Thus, the fourth Esposito factor favors Defendants.

**E. The Late Disclosure's Impact on the Court's Docket**

This case, filed in 2015, has been on the Court's docket for years. Further, Plaintiff's eleventh-hour disclosure of Exhibits 5 and 10 resulted in the pending *Motion in Limine*, which in turn only delayed even more this Court's decision regarding the pending

*Motion for Summary Judgment*. *See* Carrington Mortg. Servs. 2020 WL 86195, at *6. ("This case has lingered on the Court's docket for years, […] Plaintiff's last-minute delivery of exhibits to the Defendant created the need for this motion and further delayed resolution of the case. […] Permitting that course of action [re-opening evidence] would extend the life of this case even more."); *see also*, González-Rivera v. Centro Médico Del Turabo, Inc., 931 F.3d 23, 28 (1st Cir. 2019) (quoting Santiago-Díaz, 456 F.3d at 277) ("[w]henever a party, without good cause, neglects to comply with reasonable deadlines, the court's ability to manage its docket is compromised.") Moreover, just as in Gonzalez Rivera v. Hosp. HIMA-Caguas, "it suffices to highlight that this is now one of the oldest cases on the undersigned's docket." Gonzalez Rivera v. Hosp. HIMA-Caguas, 2018 WL 4676925, at *6 (D.P.R. 2018), aff'd sub nom. Gonzalez-Rivera, 931 F.3d 23. Moreover, "precluding them [the exhibits] does not obviously or automatically result in dismissal." Harriman, 627 F.3d at 32. Lastly, as in Harriman, here too, the timing of the disclosure of these Exhibits after the close of discovery and after Defendants' filed their summary judgment motion could potentially be viewed as a strategic move to avoid summary judgment. *See* Harriman, 627 F.3d 22, 32 ("Harriman's timing for the disclosure [more than two months after the discovery deadline, and about a month after defendants had moved for summary

judgment], coupled with his furtive post-discovery search for additional witnesses, could be viewed as strategic." Id.

### F. Conclusion Regarding Sanctions

Most of the Esposito factors favor exclusion of Exhibits 5 and 10. Plaintiff has failed to show how the disclosure of the Exhibits was neither justified nor harmless. Therefore, pursuant to Fed. R. Civ. P. 37, the Court **GRANTS** Defendants' request to strike Exhibits 5 and 10 (Docket No. 31-5 and 31-10) from the record as well as additional facts stemming from the same. As the Exhibits are stricken, the Court need not address whether they were properly authenticated.

## IV. CONCLUSION

For the reasons discussed herein, the Court **GRANTS** Defendants' *Motion in Limine* at Docket No. 33. The Trane Chile Office "Business Overview" (Exhibit 31-5) and the HVAC Puerto Rico office "2013 Financial Summary" (Exhibit 31-10), as well as any additional facts stemming from the same in the pending *Opposition to SUMF* are hereby **STRICKEN** from the record. The Caribbean Business newspaper page (Docket No. 31-11) was voluntarily withdrawn from the record by Plaintiff. (Docket No. 41 at 5).

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 21st day of February 2020.

                                            S/ RAÚL M. ARIAS-MARXUACH
                                            United States District Judge